NO. 24-1107

# In The United States Court of Appeals

# For the First Circuit

NASDI, LLC, f.k.a North American Site Developers Inc.

*DEFENDANT-APPELLANT*

V.

Edward F. Groden, Executive Director of the New England
Teamsters and Trucking Industry Pension Fund

*PLAINTIFF-APPELLEE*

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE COMMONWEALTH OF MASSACHUSETTS

CASE NO:21-cv-10303-RGS

THE HONORABLE RICHARD STEARNS

DEFENDANT-APPELLANT'S BRIEF FOR NASDI LLC

MEGAN M. DART

Dailey & Associates

353 West Center St.

W. Bridgewater, MA

02379

(617) 653-9773

MEGAN.DART@GMAIL.COM

Megan@DaileyLaw.Com

**RULE 26.1 CORPORATE DISCLOSURE STATEMENT**

NASDI is a Delaware Limited Liability Company. Its single member is North American Leasing, Inc. a Michigan Corporation that is not publicly traded.

TABLE OF CONTENTS

TABLE OF CONTENTS..............................................................3

TABLE OF AUTHORITIES.........................................................4

STATEMENT OF JURISDICTION............................................ 5

STATEMENT OF ISSUES ........................................................ 6

STATEMENT OF THE CASE....................................................7

STATEMENT OF FACTS ......................................................... 8

SUMMARY OF THE ARGUMENT...........................................9

ARGUMENT  ............................................................................ 10

CONCLUSION        ...................................................................... 19

ADDENDUM .........................................................21

CERTIFICATE OF COMPLIANCE......................................... 29

CERTIFICATE OF SERVICE ................................................. 30

TABLE OF AUTHORITIES

**Federal Cases:**

Central States Pension Fund v. Slotky, 956 F.2d 1369 (7th Cir. 1992) (Page 11)

Central States v. Murphy Brothers, Inc., 772 F. Supp. 2d 918 (N.D. Ill. 2011) (Page 18)

Central States v. Wingra, No. 21-cv-3684 (N.D. Ill. Mar. 17, 2023 (Page 18)

Combs v. Leishman, 691 F. Supp. 424 (D.D.C. 1988) (Page 18)

Connors v. Economy Bldg. Systems, Inc., 651 F. Supp. 849 (D.D.C. 1986) (Page 18)

I.A.M. National Pension Fund v. TMR Realty Co., 431 F. Supp. 2d 1 (D.D.C. 2006) (Page 12)

I.C.C. v. Holmes Transp., Inc., 931 F.2d 984, 987-88 (1st Cir. 1991) (Page 13)

In re Horned Dorset Primavera, Inc., CASE NO. 15-03837 (ESL), 22 (Bankr. D.P.R. Jul. 27, 2018) (Page 10)

Soares v. Brockton Credit Union (In re Soares), 107 F. 3d 969, 971 (1st Cir. 1997) (Page 10)

Triangle Cayman Asset Co. v. LG & AC, Corp., 52 F.4th 24 (1st Cir. 2022) (Page 13)

Trustees of the Utah Carpenters and Cement Masons Pension Trust v. New Star/Culp, No. 2:2007cv00699 Document 53 (D. Utah 2009) (Page 15)

Zucker v. Fed. Deposit Ins. Corp. (In re NetBank, Inc.), 459 B.R. 801 (Bankr. M.D. Fla. 2010) (Page 11)

**Federal Statutes:**

11 U.S.C. §362 (Page 10)

29 U.S.C. §1383, §1401 (Page 15)

**Other Authorities:**

Collier on Bankruptcy ¶ 362.03 (16th ed. 2018) (Page 11)

JURISDICTIONAL STATEMENT

NASDI LLC submits this brief in appeal of the district court's
December 11, 2023 decision on cross-motions for summary judgment
(Docket 47) and entry of a final judgment for the Plaintiff-
Appellee (Docket 48). Federal jurisdiction in the underlying
action is based upon ERISA § 502(e), 29 U.S.C. § 1132(e) and
ERISA § 4301 (e), 29 U.S.C. § 1451(e) and is proper in this
venue. The Defendant-Appellant timely noticed this appeal on
January 10, 2024. (Docket 50).

STATEMENT OF ISSUES

1. Did the district Court err in ruling that the Teamsters Pension Fund's withdrawal liability demand was not voided by NASDI's bankruptcy automatic stay?

2. Did the district Court err in ruling that NASDI waived its right to claim the building and construction exemption under 29 USC §1383(b) because it did not request arbitration of that issue despite the pension fund never having challenged the applicability of the exemption in its demand?

STATEMENT OF THE CASE

1) The Pension Fund filed its Complaint in the District Court on 02/22/2021.

2) The case was stayed on 04/23/2021 due to a Suggestion of Bankruptcy upon the record.

3) The case was dismissed on 06/15/2022 due to inactivity as the bankruptcy continued.

4) The case was reopened on 3/13/2023 following the closure of NASDI's bankruptcy case.

5) Both Parties moved for summary judgment on 11/15/2023. The Pension Fund's motion was allowed and NASDI's was denied.

6) Judgment entered against NASDI on 12/11/2023.

7) NASDI noticed this appeal on 1/10/2024.

STATEMENT OF THE FACTS

1. NASDI was a participating employer in the New England
   Teamsters and Trucking Industry Pension Fund, a
   multiemployer pension fund within the scope of the
   Employment Retirement Income Security Act (ERISA).

2. NASDI's obligation to contribute to the pension fund
   ceased upon the closure of its operations in September of
   2020.

3. ERISA and the Multiemployer Pension Plan Amendments Act
   of 1980 (MPPAA) mandate that an employer withdrawing from
   a multiemployer fund shall be responsible for its
   proportional share of unfunded liabilities to the plan.

4. Special rules exist for determining whether a withdrawal
   has occurred for employers in the building and
   construction industry.

5. The Acts also mandate any disputes concerning
   determinations made under ERISA sections 4201 through
   4219 (29 U.S. Code § 1381-1399) be resolved through
   arbitration.

6. NASDI became a debtor in a United States Bankruptcy
   proceeding on November 5, 2020 through October 24, 2022.

7. The pension fund assessed withdrawal liability in the
   amount of $2,610,240 and made demand upon NASDI by letter
   dated October 28, 2020 which was delivered to NASDI on
   November 16, 2020.

8. The letter set forth the amount and mathematical basis
   for the liability as well as a schedule for payments. The
   demand letter did not address any position of the Pension
   fund on NASDI's ineligibility for the building and
   construction exemption.

9. NASDI did not make payment or request arbitration.

10.  The Pension fund declared NASDI in default and filed
   the complaint in the District Court to collect the
   withdrawal liability.

SUMMARY OF THE ARGUMENT

**1. Violations of the automatic stay are void ab initio**

a. Commencement of collection process violates one of the cornerstone protections of bankruptcy: that the debtor be permitted breathing room.

b. Withdrawal liability demands made upon a debtor are not exempted from the protections of 11 U.S.C. 362.

c. The withdrawal demand is an essential procedural step in collection of the liability.

**2. NASDI did not waive its claim to the building and construction exemption**

a. The pension fund is incorrect in its assertion that its incumbent upon the employer to raise the building and construction exemption even in response to a demand letter that is silent on the issue.

b. No dispute existed regarding the exemption prior to litigation.

c. The statutory intent of the arbitration requirement was to streamline the resolution of actual disputes and not as a mechanism for pension funds to capitalize upon a beleaguered employer.

ARGUMENT

**1. The district Court erred in ruling that the Teamsters
   Pension Fund's withdrawal liability demand was not voided
   by NASDI's bankruptcy automatic stay. Review of this order
   on motions for summary judgment is de novo.**

The automatic stay provides debtors with one of the
cornerstone protections under bankruptcy law, giving debtors a
"breathing room" from the pressures of their creditors." <u>In re
Horned Dorset Primavera, Inc.,</u> CASE NO. 15-03837 (ESL), 22
(Bankr. D.P.R. Jul. 27, 2018). See also <u>In re Soares</u>, 107 F. 3d
at 975.

11 U.S.C. 362(a)3 and 6 specifically prohibit the following
acts: (3) any act to obtain possession of property of the estate
or of property from the estate or to exercise control over
property of the estate and (6) any act to collect, assess, or
recover a claim against the debtor that arose before the
commencement of the case under this title. Consequences of
automatic stay violation are serious even if the violation was
not willful. <u>Soares</u> at 976.

A technical violation occurs when a creditor violates the
provisions of § 362(a) without knowledge that an active
bankruptcy case is pending. The label "technical" means only
that a particular act in violation of the stay was not willful
and therefore does not itself trigger damages under § 362(k)(1).

10

It does not mean that the violation is not real or consequential. See Soares at 976 (holding that action taken in derogation of the automatic stay is not merely "voidable" but "void," a "semantic difference" that "places the burden of validating the action after the fact squarely on the shoulders of the offending creditor".) *Id* at 30.

The automatic stay is extremely broad in scope and, "aside from the limited exceptions of subsection (b), applies to almost any type of formal or informal action taken against the debtor or the property of the estate." *Id* at 22 quoting Alan N. Resnick & Henry J. Sommer, 3 Collier on Bankruptcy ¶ 362.03 (16th ed. 2018). NASDI did not need to identify a specific automatic stay violation concerning a withdrawal liability demand letter because it is not included amongst these exceptions. See Zucker v. Fed. Deposit Ins. Corp. (In re NetBank, Inc.), 459 B.R. 801 (Bankr. M.D. Fla. 2010)

Neither the Pension Fund nor the District Court have asserted that notices under ERISA fall within any of the named exceptions enumerated in §362(b).[1] The district Court adopted the reasoning set forth in Central States Pension Fund v. Slotky, 956 F.2d 1369 (7th Cir. 1992). (RA at 15) (See also, I.A.M. National Pension Fund v. TMR Realty Co., 431 F. Supp. 2d 1

---

[1] Most of the exceptions apply to criminal, family law or other proceedings unrelated to debt collection.

(D.D.C. 2006) The discussion in Slotky is focused less upon the significance of the demand letter to the actual debtor but rather the contemporaneous notice given to a nonbankrupt co-debtor which is not an issue of dispute in this present appeal.

The holding in Slotky (a 7th Circuit case) that a violation of the automatic stay can result in civil contempt without also voiding the underlying action is entirely inconsistent with well accepted First Circuit case law. Stotky states at 1376 "But even if the demand violated the automatic stay, all that this would mean, it seems to us, so far as bears on this case (for the violation might of course expose the violator to contempt proceedings, as with any other violation of a judicial order), is that the pension plan could not proceed against Stevens unless the bankruptcy judge lifted the stay."

In comparison, the First Circuit has reasoned as follows, "We have consistently recognized that actions in contravention of an automatic stay are void and have no legal effect. I.C.C. v. Holmes Transp., Inc., 931 F.2d 984, 987-88 (1st Cir. 1991). See also, Triangle Cayman Asset Co. v. LG & AC, Corp., 52 F.4th 24 (1st Cir. 2022). (Rejecting argument that if creditor actions were ineffective when made that they became effective once the bankruptcy stay was lifted).

Slotky seems to imply that a creditor could weigh the potential benefits of violating the stay against the risk of

12

damages being assessed against them. In such a situation, the "breathing room" that is often a major motivating factor behind a bankruptcy filing, is only guaranteed to those debtors who have retained sufficient resources to raise a challenge against offending creditors.

A strict reading of that language in Slotky (that the plan could not proceed against {the debtor} unless the bankruptcy judge lifted the stay) could also be interpreted to mean that a plaintiff could proceed through litigation against a debtor stopping short of execution on a judgment. Or that a landlord or mortgagee could take all of the procedural steps in an eviction or foreclosure, securing their rights in possession to the prejudice of the debtor. The debtor would in turn need to choose between diverting efforts from a reorganization or "fresh start" to defending against those actions that would await him when the bankruptcy process has concluded.

It is well settled that a debtor under the protection of bankruptcy must be relieved from participation in all preliminary judicial or administrative proceedings if the aim is to collect a debt just the same as they are protected from the more overt or final acts to divest them of assets.

It is important to understand that the demand letter at issue in this instant appeal (R.A. at 110) is not an innocuous informational document such as a mortgage or credit statement

13

(See, e.g. Zucker at 820, notice not within exceptions violated automatic stay) but rather a critical procedural step in a collections process that imposes a series of obligations upon the debtor such as arbitration and interim payments. See 29 U.S.C. §1383-1401.

Failure to timely address the subject matter set forth in the demand can irreparably prejudice the debtor's position. The debtor may need to employ attorneys, accountants and other professionals as well as divert time and effort to preserve its rights in the face of a withdrawal liability demand, all of which are thoroughly inconsistent with the spirit of the automatic stay.

That it is a rare occasion for a pension fund to make the bold decision or unfortunate mistake to assert withdrawal liability upon a bankrupt should not preclude NASDI from disavowing the 2020 Withdrawal Liability Demand as a violation of the automatic stay, being void.

**2. The district Court erred in ruling that NASDI waived its right to claim the building and construction exemption under 29 USC §1383(b) because it did not request arbitration of that issue despite the Pension fund never having challenged the**

14

**applicability of the exemption in its demand. Review of this order on motions for summary judgment is *de novo*.**

Determining whether {the employer} actually withdrew from the plan is an essential step in the assessment of withdrawal liability, which falls well within the plain language of the arbitration requirement." <u>Trustees of the Utah Carpenters and Cement Masons Pension Trust v. New Star/Culp</u>, No. 2:2007cv00699 Document 53 (D. Utah 2009). By extension, it is suggested that a dispute exists if the Plan claims liability that the Employer denies it owes. But the mere existence of disagreement between the parties does not necessarily demonstrate a dispute that falls within the §1401 arbitration mandate. The Pension Fund appears to manufacture a "dispute" after the fact while simultaneously claiming that NASDI must have affirmatively asserted its rights to the building construction exemption in response to a generic withdrawal liability demand.

The "special rules" for the building and construction industry §1383(b) dictate otherwise.  In addition to determining whether an Employer has permanently ceased to have an obligation to contribute under the plan, or permanently ceased all covered operations under the plan within §1383(a), the Plan sponsor must

also determine whether the foregoing factors set forth in §1383(b) are applicable.

(b) Building and construction industry

(1) Notwithstanding subsection (a), in the case of an employer that has an obligation to contribute under a plan for work performed in the building and construction industry, a complete withdrawal occurs only as described in paragraph (2), if—

(A) substantially all the employees with respect to whom the employer has an obligation to contribute under the plan perform work in the building and construction industry, and

(B) the plan—

(i) primarily covers employees in the building and construction industry, or

(ii) is amended to provide that this subsection applies to employers described in this paragraph.

(2) A withdrawal occurs under this paragraph if—

(A) an employer ceases to have an obligation to contribute under the plan, and

(B) the employer—

(i) continues to perform work in the jurisdiction of the collective bargaining agreement of the type for which contributions were previously required, or

(ii) resumes such work within 5 years after the date on which the obligation to contribute under the plan ceases, and does not renew the obligation at the time of the resumption.

16

There was no evidence upon the record that the Teamsters Pension Fund ever made a determination under 1383(b). The undisputed record indicates only that the Fund made the initial determination under 1383(a) and NASDI failed to assert its claim to the building and construction exemption in response.

NASDI maintains that this manner for assessing liability is not in accordance with the intent of the statute. If Congress intended that the building and construction exception be available only to employers that timely raise it in response to a determination made under 1383(a) it would state as much. Instead, the statute provides that 1383(b) is a separate set of special rules at the determination level.

The District Court relies principally on the arbitration mandate contained within 29 U.S.C.§1401 which provides that "Any dispute between an Employer and a Plan Sponsor of a multiemployer plan concerning a withdrawal liability determination under sections 1381-1399 shall be resolved through arbitration". (R.A. at 13)

NASDI does not disagree with the Court that disputes under §1383 concerning the applicability of the building construction exemption are encompassed within that mandate. At issue here is that a dispute concerning a *determination made under 1383(b)* could not have occurred without there first being a determination made pursuant to that subsection.

17

NASDI did not dispute the calculation of its share of unfunded liability (1381(a)) to which they would be obligated absent the exemption or the fact that they had ceased covered operations and no longer had an obligation to contribute (1383(a)). The building and construction exemption under 1383(b) was never addressed. That colorable (See Central States v. Murphy Brothers, Inc., 772 F. Supp. 2d 918 (N.D. Ill. 2011) disputes concerning BCIE can and do arise and are properly resolved through arbitration does not mean that such a dispute necessarily has occurred between NASDI and the Pension fund.

The extraordinary relief of judicial review in the absence of a previous arbitration has been warranted in certain circumstances. See Central States v. Wingra, No. 21-cv-3684 (N.D. Ill. Mar. 17, 2023 (Holding employer could assert its challenge in district court rather than arbitration due to allegation of bad faith expulsion from plan). Connors v. Economy Bldg. Systems, Inc., 651 F. Supp. 849 (D.D.C. 1986) (Holding arbitration not required when legal basis for defense not yet available at time provided for arbitration). NASDI asserted comparable arguments in its opposition to Plaintiff's motion for summary judgment. (R.A. at 24, funds intentional disregard for rules and time for final determination is premature).

NASDI submits that a "narrowly cabined" (See Combs v. Leishman, 691 F. Supp. 424 (D.D.C. 1988)) exception to the

arbitration mandate such as exists here where the parties disagree on a "threshold issue" of whether a dispute concerning sections 1381-1399 actually occurred would not undermine the Congress's objective of efficient resolution of legitimate disputes. Nor would it pose a heavy burden upon a plan sponsor to disclose at the outset of its liability assessment its position on the applicability of the building and construction exemption rather than waiting for the Employer to object.

CONCLUSION

To conclude, the initial demand served upon NASDI by the Pension Plan was void due to the automatic stay being in effect, no relief from stay having been requested and no exception existing for this sort of notice. As the initial demand was void, NASDI has not waived its defenses by failing to request arbitration within the deadline created by that demand letter. Moreover, that NASDI did not request arbitration on the issue of the building and construction exemption did not preclude it from raising it as a defense in the District Court because the Fund never made a any determinations concerning 1383(b) upon which a dispute could arise. Accordingly, the Judgment against NASDI should be reversed.

Respectfully submitted,

/s/ Megan M. Dart

For NASDI LLC

MEGAN M. DART

BAR ID: 1211241

(617) 653-9773

MEGAN.DART@GMAIL.COM

Megan@DaileyLaw.Com

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 21-10303-RGS

EDWARD F. GRODEN

v.

NASDI, LLC

MEMORANDUM AND ORDER ON
CROSS-MOTIONS FOR SUMMARY JUDGMENT

December 11, 2023

STEARNS, D.J.

Plaintiff Edward F. Groden brings this action against defendant NASDI, LLC (NASDI) on behalf of the New England Teamsters and Trucking Industry Pension Fund (Pension Fund), seeking to recover unpaid contributions (Count I) and withdrawal liability (Count II).  Before the court are the parties' cross-motions for summary judgment as to withdrawal liability.[1]  For the following reasons, the court will allow plaintiff's motion and deny defendant's motion.

---

[1] NASDI does not dispute that plaintiff is entitled to judgment as a matter of law on its claim for unpaid contributions.  Def.'s Mem. in Resp. to Pl.'s Mot. for Summ. J. (Def.'s Opp'n) [Dkt #43] at 1.  The court accordingly grants this portion of plaintiff's motion without further analysis.

## BACKGROUND

The material facts are not in dispute. *See* Def.'s Resp. to Pl.'s Statement of Facts [Dkt # 44] ¶¶ 1-23. NASDI commenced participation in the Pension Fund, a multiemployer plan within the scope of the Employment Retirement Income Security Act (ERISA), in 1983. Although NASDI paid contributions for several decades, it stopped making contributions after June of 2020. Three months later, in September of 2020, it laid off all its workers.

The Pension Fund determined that NASDI effected a "complete withdrawal" within the scope of 29 U.S.C. § 1381(a) and, by letter dated October 28, 2020, demanded that NASDI pay withdrawal liability of $2,610,240. NASDI received the demand letter on November 16, 2020. At the time, an automatic stay was in effect due to an involuntary bankruptcy petition filed by creditors of NASDI on November 5, 2020. The bankruptcy court subsequently converted the petition into a Chapter 11 petition and, in 2022, dismissed it, lifting the stay.

NASDI did not submit a request for arbitration of any dispute concerning the Pension Fund's demand for withdrawal liability (whether in the wake of its initial delivery or after the stay was lifted). It has, to date, not paid any of the withdrawal liability assessed by the Pension Fund.

2

## DISCUSSION

Summary judgment is appropriate when, based upon the pleadings, affidavits, and depositions, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Here, the parties agree as to the material facts; they dispute only the legal import of those facts. Questions of law, such as the court faces here, are "appropriate for resolution by summary judgment." *Fernandes v. AGAR Supply Co.*, 687 F.3d 39, 42 (1st Cir. 2012), quoting *Afarian v. Massachusetts Elec. Co.*, 449 Mass. 257, 261 (2007); *see also Cummings Props., LLC v. Pub. Serv. Ins. Co.*, 343 F. Supp. 3d 1, 3 (D. Mass. 2018).

Under 29 U.S.C. § 1381(a), "[i]f an employer withdraws from a multiemployer plan in a complete withdrawal . . . then the employer is liable to the plan in the amount determined under this part to be the withdrawal liability." A "complete withdrawal" generally occurs when an employer "permanently ceases to have an obligation to contribute under the plan" or "permanently ceases all covered operations under the plan." *Id.* § 1383(a). In the building and construction industry, however, Congress has "designed special rules" for determining whether a complete withdrawal has occurred because "work often fluctuates and is done on a project-by-project basis." *Laborers Pension Tr. Fund-Detroit & Vicinity v. Gemelli Concrete LLC*,

3

2023 WL 6280256, at *3 (E.D. Mich. Sept. 26, 2023), quoting *Sofco Erectors, Inc. v. Trs. of Ohio Operating Eng'rs Pension Fund*, 15 F.4th 407, 416 (6th Cir. 2021).  An employer in the building and construction industry only effects a "complete withdrawal" if it (1) ceases to have an obligation to contribute under the plan, and (2) either continues to perform or resumes within 5 years the type of work for which contributions were previously required.  29 U.S.C. § 1383(b)(2).

The Pension Fund determined that NASDI had completely withdrawn from the plan under § 1381(a) and, in the fall of 2020, assessed withdrawal liability in the amount of $2,610,240.  NASDI did not initiate arbitration to challenge the Pension Fund's determination that it owed withdrawal liability.[2]  It now contends, however, that it is exempt from withdrawal liability pursuant to § 1383(b).  The problem is this:  NASDI has waived its § 1383(b) argument.

Under ERISA, as amended by the Multiemployer Pension Plan Amendments Act (MPPAA), "[a]ny dispute between an employer and the

---

[2] No more is needed on plaintiff's part to establish liability.  *See Gesualdi v. Town Holding Corp.*, 2019 WL 5693803, at *5 (E.D.N.Y. Aug. 15, 2019) ("[N]o supporting documentation is required to support a finding of withdrawal liability if the defendant fails to initiate arbitration."), quoting *Trs. of the Local 813 Pension Trust Fund v. Frank Miceli Jr. Contracting, Inc.*, 2016 WL 5879612, at *2 (E.D.N.Y. Mar. 9, 2016).

4

plan sponsor of a multiemployer plan concerning a" withdrawal liability determination *"shall be* resolved through arbitration."  29 U.S.C. § 1401(a)(1) (emphasis added).  "If no arbitration proceeding has been initiated pursuant to subsection (a), the amounts demanded by the plan sponsor . . . *shall be* due and owing on the schedule set forth by the plan sponsor."  *Id.* § 1401(b)(1) (emphasis added).  The statutory text leaves no room for ambiguity.  By failing to raise the applicability of the exemption in § 1383(b) in an arbitration proceeding, NASDI has waived "any objection to the withdrawal liability assessed by the plan."  *Bd. of Trs. of Constr. Indus. & Laborers Joint Pension Tr. for S. Nevada v. Recreation Dev. Co.*, LLC, 2023 WL 2226848, at *4 (D. Nev. Feb. 24, 2023).

Seeking to avoid the inevitable, NASDI argues that it "had no obligation to request arbitration," either because "the exemption exists as a matter of right" or because the Pension Fund failed to affirmatively "mak[e] any determinations which might have disqualified NASDI from the exemption."  Def.'s Opp'n at 3-4; Def.'s Mem. in Supp. Mot. for Summ. J. [Dkt # 30] at 5.  But it offers no legal support for the proposition that, despite disputes concerning § 1383(b) seemingly being encompassed within the plain text of the provision, the applicability of the exemption somehow falls outside the scope of § 1401(a)'s mandate.  Nor can it.  Every court to face the

5

issue has reached a contrary conclusion. *See, e.g.*, *Recreation Dev. Co., LLC*, 2023 WL 2226848, at *5 (rejecting the argument that the employer did not need to arbitrate whether it met the building and construction industry exception); *Trs. of Laborers' Local 310 Pension Fund v. Able Cont. Grp., Inc.*, 2007 WL 2238361, at *7 (N.D. Ohio Aug. 1, 2007) ("Indeed, § 1383 falls squarely within the range of sections for which any disputes must be resolved through arbitration."); *cf. Dycom Indus., Inc. v. Pension, Hospitalization & Benefit Plan of Elec. Indus.*, 2023 WL 2625811, at *1 (S.D.N.Y. Mar. 24, 2023) (submitting the issue to arbitration). The court sees no reason to depart from such authority here.

NASDI alternatively argues that, because an automatic stay was in effect at the time it was delivered, the October 28, 2020 demand letter "should be considered void." Def.'s Opp'n at 4. The court is not convinced that service of a demand letter for withdrawal liability violates the automatic stay.[3] *See Cent. States, Se. & Sw. Areas Pension Fund v. Basic Am. Indus., Inc.*, 252 F.3d 911, 918 (7th Cir. 2001) ("[A]lthough 'demanding' payment from a debtor in bankruptcy other than in the bankruptcy proceeding itself

---

[3] NASDI focuses solely on the October 28, 2020 letter. It does not suggest that, if the letter validly gave notice, the Pension Fund's notice of default in May of 2021 or subsequent filing of this lawsuit violated the bankruptcy stay and thus should be considered void.

6

is normally a violation of the automatic stay, the demand for payment of withdrawal liability is probably an exception to this principle."); *I.A.M. Nat'l Pension Fund v. TMR Realty Co.*, 431 F. Supp. 2d 1, 20 (D.D.C. 2006) (concluding that "the automatic stay obtained by" the employer "had no impact on the notices provided to" it under ERISA).  But even assuming it does, NASDI's argument is without legal merit.  It fails to cite even a single case indicating that the effect of any violation would be to render notice void and not, as other courts have suggested, merely equitably tolled until the stay was lifted.  *See Cent. States, Se. & Sw. Areas Pension Fund v. Slotky*, 956 F.2d 1369, 1376 (7th Cir. 1992) (noting that, even if an ERISA demand letter violated a bankruptcy stay, the consequence would be that "that the pension plan could not proceed against [the employer] unless the bankruptcy judge lifted the stay").

## ORDER

For the foregoing reasons, plaintiff's motion for summary judgment is <u>ALLOWED</u> and defendant's motion for summary judgment is <u>DENIED</u>.  The Clerk shall enter judgment against NASDI on all claims and close the case.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE

7

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Edward F. Groden

       Plaintiff

       v.                         CIVIL ACTION 21-10303-RGS

NASDI, LLC

       Defendant

JUDGMENT

STEARNS, D.J.

     In accordance with the court's Memorandum and Order [Dkt # 47] issued on

December 11, 2023, granting plaintiff's Motion for Summary Judgment, it is ORDERED

and ADJUDGED:

     Judgment entered against NASDI, LLC.

                                    By the court,

December 11, 2023                   /s/ Arnold Pacho
Date                                  Deputy Clerk

## Certificate of Compliance With Type-Volume Limit

Certificate of Compliance With Type-Volume Limit,
Typeface Requirements, and Type-Style Requirements

    1.  This document complies with the word limit of Fed. R. App. P. [insert Rule citation] because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

☑ this document contains  __2708__  words, **or**

☐ this brief uses a monospaced typeface and contains _____ lines of text.

    2.  This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

☐ this document has been prepared in a proportionally spaced typeface using _____ in _____, **or**

☑ this document has been prepared in a monospaced typeface using Courier New _____ with Size 12 _____.

(s) _Megan Marie Dart Esq._

Attorney for  _APPELLANT_

Dated:  _3-18-2024_

CERTIFICATE OF SERVICE FORM FOR ELECTRONIC FILINGS

I hereby certify that on 3/18/2024 I electronically filed the foregoing document with the United States Court of Appeals for the First Circuit by using the CM/ECF system. I certify that the following parties or their counsel of record are registered as ECF Filers and that they will be served by the CM/ECF system:


Notice will be electronically mailed to:

Melissa Ann Brennan
Catherine M. Campbell
Steven J. Fonseca

Attorneys for Edward F. Groden, Executive Director of New England Teamsters & Trucking Industry


/S/ Megan M. Dart